UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:24-CV-00465-FDW-DCK

| ECO FIBER INC., | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | **ORDER** |
| DAVID KEVIN VANCE, | ) |  |
| Defendant. | ) |  |

**THIS MATTER** is before the Court on Plaintiff's Motion for Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. (Doc. No. 5.) Also before this Court is Plaintiff's Motion for Bond pursuant to N.C. Gen. Stat. § 75-144(a). (Doc. No. 5.) Plaintiff Eco Fiber Inc. ("EFI") requests the Court preliminary enjoin Defendant David Kevin Vance ("Vance"), and any persons acting in concert with Defendant, from making bad-faith, objectively false assertions of infringement to any customer or prospective customer until the above-captioned case is resolved. For the reasons below, Eco Fiber's Motion for Preliminary Injunction is **GRANTED** and the Motion for Bond is **DENIED**.

**I. MOTION FOR PRELIMINARY INJUNCTION**

**A. Findings of Fact**

Upon consideration of the record, including the briefs related to the Motion, the exhibits and affidavits accompanying each document, and the hearing held on June 18, 2024, the Court makes the following findings of fact[1]:

---

[1] These findings of fact are based on the limited record before the Court and are not intended to be binding for purposes of ruling on dispositive motions that may arise and/or trial. See Daimler Chrysler Corp. v. Kirkhart, 148 N.C. App. 572, 578 (2002); Kaplan v. Prolife Action League of Greensboro, 111 N.C. App. 1, 16 (1993).

1

1. Plaintiff EFI makes and sells insulated boxes for cold-chain packaging. (Doc. No. 1, p. 3.)

2. Defendant's consulting company, Zone 1 Consulting, LLC ("Zone 1"), represented to Plaintiff that Defendant had a patent on insulated containers having three insulating pads that were made and sold by Plaintiff and negotiated a patent royalty for the purported use of such patent of 5% for all sales of the insulated container having three insulating pads ("Patent Royalty"). (Doc. No. 1, p. 3–4.)

3. Plaintiff began paying the Patent Royalty in January 2023 and ceased paying the Patent Royalty in December 2023. (Doc. No. 1, p. 4.)

4. In total, Plaintiff paid at least $240,776.05 as the Patent Royalty. (Id.)

5. Plaintiff ceased paying the Patent Royalty because Plaintiff learned from patent counsel that Defendant did not have a patent until October 3, 2023, and Defendant's patent counsel interpreted the patent as not covering the insulated containers made by Plaintiff. (Doc. No. 1, p. 4–5.)

6. Defendant's patent is U.S. Patent No. 11,772,872 ("the '872 Patent"). The '872 Patent is titled "Insulated Container and Method of Forming and Loading an Insulated Container" and was granted on October 3, 2023. All of the '872 Patent's claims are for "[a] method of forming and loading an insulated container" that comprises at least twelve specifically recited steps. (Id.)

7. As the inventor and patentee, Defendant knew or should have known the '872 Patent claimed a method of forming and loading an insulated container and that the '872 Patent did not claim an insulated container.

8. Defendant has specific knowledge the '872 Patent does not cover an insulated container. The patent application that issued as the '872 Patent originally presented claims for both

the forming and loading method and the insulated container itself. In an Office Action dated April 12, 2023, the U.S. Patent & Trademark Office required Defendant to elect for examination either the forming and loading method claims or the insulated container claims. In response, Defendant elected for examination the method claims to the exclusion of the insulated container claims, and the insulated container claims were withdrawn. Defendant later filed divisional patent application 18/455,195 on August 24, 2023, for purposes of pursuing patent protection on the insulated container, which divisional patent application is pending and awaits initial examination. (Doc. No. 1, p. 5.)

9. After Plaintiff ceased paying the Patent Royalty, Defendant did not contact Plaintiff about the cessation of payment of the Patent Royalty, nor did Defendant assert to Plaintiff the insulated containers having the three pads infringed the '872 Patent or that any of Plaintiff's customers, by purchasing such containers from Plaintiff, infringed the '872 Patent. (Id.)

10. Plaintiff and Veritiv Corporation ("Veritiv"), Plaintiff's largest customer, have had a business relationship since July 2021 when Plaintiff became an official vendor of Veritiv. (Doc. No. 1, p. 5–6.)

11. Veritiv represented 75 to 85 percent of Plaintiff's annual sales. (Doc. No. 1, p. 5.)

12. Plaintiff estimates monthly sales of the insulated container having three insulating pads by Plaintiff to Veritiv for the first three months of 2024 were $832,487.21, and that the monthly profit is 30%, or $249,746.16. (Doc. No. 1, p. 6.)

13. On April 10, 2024, Defendant emailed a Veritiv sales employee stating, "Let me know if you need anything else." Attached to the email was a copy of Defendant's '872 Patent. (Doc. No. 19-9, p. 2.)

14. After receiving the email from Defendant, Veritiv ceased all purchases from Plaintiff of insulated containers having three insulating pads. (Doc. No. 1, p. 7.)

15. Plaintiff estimates the resulting loss of sales in the first month without any such sales to Veritiv is $249,746.16, which is 30% of the average monthly sales so far in 2024. Plaintiff represents this has put Plaintiff in a dire situation and Plaintiff cannot afford to lose any further sales.

**B.     Conclusions of Law**

A preliminary injunction is an extraordinary remedy, the primary function of which is to protect the status quo and "to prevent irreparable harm during the pendency of a lawsuit." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). Courts evaluating a request for preliminary injunction "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542 (1987). A party seeking a preliminary injunction must establish the following four factors: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

    1.     Likelihood of Success on the Merits

The North Carolina Abusive Patent Assertion Act ("APAA") makes it "unlawful for a person to make a bad-faith assertion of patent infringement." N.C. Gen. Stat. § 75-143. "To make a claim of bad faith under federal patent law, a party must plead both objective and subjective bad faith." Globetrotter Software, Inc. v. Elan Comput. Grp., Inc., 32 F.3d 1367, 1374–75 (Fed. Cir.

2004). Importantly, the APAA does not apply to "[a] demand letter or assertion of patent infringement made by an operating entity[2] or its affiliate[3]." N.C. Gen. Stat. § 75-143(c)(4).

On the present record, the Court does not find Defendant exempt from the statute as a qualifying operating entity or affiliate. While Defendant has a 20 percent interest in a business which manufacturers product in the cold-chain packaging industry, that does not meaningfully support the statute's definition requiring an affiliate be "wholly or substantially owned." N.C. Gen. Stat. § 75-142(1). There is also insufficient evidence at this time to find Defendant "primarily engaged" the other two categories allowing for exemption.

### i. Assertion of Patent Infringement

The APAA defines "demand" as "[a] letter, email, or other communication asserting or claiming that a target has engaged in patent infringement or should obtain a license to a patent." N.C. Gen. Stat. § 75-142(2). Though a close call, based on the record before the Court, Defendant made an assertion of patent infringement to Veritiv.

Plaintiff and Veritiv began doing business in 2021. In January of 2023, Plaintiff began paying the Patent Royalty to Defendant for use of insulated containers having three insulating pads. (Doc. No. 1, p. 3–4.) On April 10, 2024, a few months after Plaintiff stopped paying the Patent Royalty, Defendant emailed a Veritiv sales employee stating, "Let me know if you need anything else." (Doc. No. 19-9, p. 2.) Attached to the email was a copy of Defendant's '872 Patent. (Id.) The language of the email provides a strong inference of precipitating communications regarding the '872 Patent. On this record, there is no evidence indicating Veritiv had any patent-

---

[2] An "operating entity" is defined as "[a] person primarily engaged in, when evaluated with its affiliates over the preceding 24-month period and when disregarding the selling or licensing of patents, one or more of the following activities: (a) research and technical or experimental work to create, test, qualify, modify, or validate technologies or processes for commercialization of goods or services; (b) manufacturing; or (c) the provision of goods or commercial services." N.C. Gen. Stat. § 75-142(5).

[3] An "affiliate" is defined as "business establishment, business, or other legal entity that wholly or substantially owns, is wholly or substantially owned by, or is under common ownership with another entity." N.C. Gen. Stat. § 75-142(1).

5

related concerns prior to the April communications with Defendant. In fact, it is clear from Veritiv's email to EFI on April 10, 2024, that their legal department had yet to even investigate the validity of the patent, only relying on Defendant's assertions to sales representatives at that point. (Doc. No. 1-3, p. 1.) Based on these circumstances, the Court finds Plaintiff has shown a reasonable likelihood of success as to an assertion being made by Defendant to Veritiv.

      *ii.*      *Objectively Baseless*

Objective bad faith is satisfied where the claim is objectively baseless "in the sense that no reasonable litigant could realistically expect success on the merits." Globetrotter, 32F.3d at 1376. "In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1371 (Fed. Cir. 2002); see also Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1354 (Fed. Cir. 1999) ("Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith is made out.").

The '872 Patent entitled "Insulated Container and Method of Forming and Loading an Insulated Container" was granted on October 3, 2023, and includes 12 claims. Because the U.S. Patent & Trademark Office required Defendant to elect for examination of either the forming and loading method claims or the insulated container claims, Defendant knew the insulated container claims were withdrawn upon his election of examination of the method claims. In fact, Defendant filed an application on August 24, 2023, comprising apparatus claims including an "insulated container". (Doc. No. 18, p. 10.) Thus, at the time of the alleged assertion, Defendant knew his application for a patent on the insulated container remained pending and the '872 Patent only covered the forming and loading method. Furthermore, Defendant, on account of his consulting

6

relationship with Plaintiff and communications with Veritiv, knew neither Plaintiff nor Veritiv used the entire 12-step forming and loading method protected by Defendant's patent. See Akamai Tech., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022 (Fed. Cir. 2015) ("We will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."). Accordingly, there is a reasonable likelihood of success by Plaintiff on the issue of objective baselessness.

### iii. Bad Faith

The APAA outlines a variety of factors which may be considered as evidence of bad faith. See N.C. Gen. Stat. § 75-143(a). In addition to the objective baselessness of the assertion, the deception by Defendant provides evidence of bad faith. Specifically, despite Defendant receiving the Patent Royalty payments from Plaintiff equaling $240,776.05 for nearly a year, Defendant did not inquire when payments terminated. A reasonable litigant would generally make an inquiry when they stop receiving a benefit they believe they are entitled to. Defendant did, however, contact Veritiv. Then, within days, Veritiv pulled their orders from Plaintiff citing legal exposure related to the '872 Patent. There is no evidence indicating Defendant conducted an analysis comparing the claims in the '872 Patent to Plaintiff's product prior to contacting Veritiv. Accordingly, there is a reasonable likelihood of success by Plaintiff on the issue of bad faith.

2. Irreparable Harm

The second requirement for a party to obtain a preliminary injunction is whether that party is likely to suffer irreparable harm without preliminary relief. Winter, 555 U.S. at 20. "The Fourth Circuit has recognized that the loss of goodwill in the relevant industry, loss of customers, and *loss of the ability to attract new customers* are difficult to quantify in terms of money damages and thus

7

may justify injunctive relief. See Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship, 442 F. App'x 776, 785 (4th Cir. 2011) (emphasis added). Additionally, "even where a harm could be remedied by money damages at judgment, irreparable harm may still exist where the moving party's business cannot survive absent a preliminary injunction." Hughes Network Sys., Inc. v. Interdigital Comm. Corp., 17 F.3d 691 (4th Cir. 1994) (quoting Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984)).

In the first month without purchases from Veritiv of the insulated containers having three insulating pads from Plaintiff, Plaintiff loss $249,746.16 or 30 percent of their average monthly sales. Annually, Veritiv's sales represent at least 75 percent of all sales for Plaintiff. As a result of the total loss to date, Plaintiff has laid off a majority of its employees. (Doc. No. 5, p. 7.) Due to the impending threat of Plaintiff's operations not surviving the pendency of this matter, the Court finds the requirement for irreparable harm satisfied.

3. Balance of Equities

The third requirement for a party to obtain a preliminary injunction is whether the balance of equities tips in the moving party's favor. Winter, 555 U.S. at 20. As previously stated, Plaintiff is at severe risk of losing their business. Additionally, there is no risk of infringing on Defendant's First Amendment rights as the requested injunction only precluded bad-faith, objectively false assertions of infringement and not those made in good faith. Accordingly, the balance of equities tips in favor of Plaintiff.

4. Public Interest

The fourth requirement for a party to obtain a preliminary injunction is whether it would be in the public interest. Winter, 555 U.S. at 20. Importantly, Plaintiff is a manufacturer located in North Carlina who employs North Carolina residents. The preliminary injunction seeks only to

8

Case 3:24-cv-00465-FDW-DCK   Document 25   Filed 06/21/24   Page 8 of 10

require Defendant to comply with requirements of the law of this state related to abusive assertions of patent infringement. It is within the interest of the public for the laws of this state to be upheld. Therefore, this requirement is satisfied.

## II. MOTION FOR BOND

Pursuant to the APAA, if there is a finding of a reasonable likelihood of success on the merits under the Act, "the court shall require [defendant] to post a bond in an amount equal to a good-faith estimate of the target's fees and costs to litigate the claim and the amounts reasonably likely recovered." N.C. Gen. Stat. § 75-144(a). However, a court "may waive the bond requirements . . . if it finds the person has available assets equal to the amount of the proposed bond or for other good cause shown." N.C. Gen. Stat. § 75-144(b).

The Court finds good cause present to waive the bond requirement under the APAA. Based on the record before this Court, Defendant is a part owner in two businesses presently generating revenue with no existing concerns of future insolvency. Additionally, Defendant has raised a question regarding the constitutionality of the APAA's bond provision. Among states with similar abusive patent assertion statutes, there are unresolved concerns related to potential preemption. Therefore, the Court will waive the APAA bond requirement in this matter.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction, (Doc. No. 5), is **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of $10,000.00.[4] The Preliminary Injunction herein shall become effective upon Plaintiff's posting of the $10,000.00 bond amount.

---

[4] In determining the amount of the bond, the Fourth Circuit has explained that the Court "should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers

9

Case 3:24-cv-00465-FDW-DCK   Document 25   Filed 06/21/24   Page 9 of 10

**IT IS FURTHER ORDERED** that, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendant, and any person acting in concert or participation with Defendant, is enjoined from making in bad faith objectively false assertions to any customer or prospective customer of Plaintiff that insulated containers made and sold by Plaintiff infringe the '872 Patent.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Bond, (Doc. No. 5), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Consolidate, (Doc. No. 14), is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Signed: June 21, 2024

_____
Frank D. Whitney
United States District Judge

---

as a result of an improvidently issued injunction," and as such, the bond amount "ordinarily depends on the gravity of the potential harm to the enjoined party." Hoechst Diafol Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421 n.3 (4th Cir. 1999). The Court finds that $10,000.00 is appropriate in light of Plaintiff's financial situation and in consideration of the minimal harm Defendants will likely suffer as a result of this Preliminary Injunction. Further, the Court finds this bond is appropriate and adequate to protect Defendant in the event that Defendants are later found to have been wrongly enjoined or restrained.